EXHIBIT 3

FILED
DALLAS COUNTY
2/9/2015 4:44:47 PM
FELICIA PITRE
DISTRICT CLERK

Gay Smith

DC-15-01633

Cause No. _______________

| | | |
|---|---|---|
| SSG BASEBALL, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | DALLAS COUNTY, TEXAS |
| | § | |
| SELECT SPORTS GROUP, LLC | § | |
| | § | |
| | § | |
| DEFENDANT. | § | _____ JUDICIAL DISTRICT |

**ORIGINAL PETITION AND REQUEST FOR DISCLOSURE**

Plaintiff SSG Baseball, LLC ("Plaintiff") files this Original Petition and Request for Disclosure against Defendant Select Sports Group, LLC ("Defendant").

**I. DISCOVERY CONTROL PLAN**

1. Discovery shall be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

**II. PARTIES AND VENUE**

2. Plaintiff is a Texas limited liability company with its principal place of business in Dallas County, Texas.

3. Defendant is a Texas limited liability company with its principal place of business at 2700 Post Oak Blvd., Suite 1450, Houston, Texas 77056.

4. Venue is proper in this Court pursuant to Section 15.002(a)(1) of the TEXAS CIVIL PRACTICE & REMEDIES CODE because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas.

5. At this time, Plaintiff seeks declaratory (non-monetary) relief and aggregate monetary relief (including attorneys' fees) which is anticipated to exceed $200,000 but not more

than $1,000,000. Plaintiff reserves the right to amend this pleading to seek other or additional relief as discovery progresses.

## III. FACTS

6. This is a state law action for declaratory judgment under the Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.001 *et seq*. Plaintiff seeks a declaratory judgment confirming (a) Plaintiff's ownership of and/or right to use two common law trademarks, "SSG Baseball" and "Select Sports Group Baseball" (collectively, the "Marks"); and (b) that Plaintiff has not infringed on any common law trademark rights of Defendant in connection with the Marks.

7. Plaintiff is a Dallas, Texas–based sports agency that represents baseball players.

8. Defendant is, on information and belief, a Houston, Texas–based sports agency that (at least until very recently) has represented only football players.

9. Prior to 2012, Plaintiff's baseball agency and Defendant's football agency were affiliated predecessor companies under common ownership.

10. Since at least January 2010, Plaintiff and its predecessor, SSG Baseball, L.P., have owned and held the unconditional right to use the "SSG Baseball" and "Select Sports Group Baseball" Marks in connection with the operation of their baseball agency. At that time, Plaintiff's predecessor placed the public on notice of such use by, among other things, making assumed name filings with the State of Texas.

11. Thereafter, Plaintiff's predecessor and later, Plaintiff – at all times with Defendant's actual and/or constructive knowledge (a) used the Marks in connection with the development and operation of their baseball agency, including from common office space shared with Defendant to this day; and (b) invested substantial money, time, effort and resources in developing their baseball agency business and associated goodwill in connection with the Marks.

12. In early 2012, the common ownership of Plaintiff's and Defendant's respective predecessors terminated, and the baseball and football agencies continued operating under separate ownership in the form of new companies.

13. During and after the separation, Plaintiff – at all times with the actual and/or constructive knowledge of Defendant – continued to operate its baseball agency using the "SSG Baseball" and "Select Sports Group Baseball" Marks. Among other things, Plaintiff openly communicated with Defendant's representatives using the "Select Sports Group Baseball" Mark.

14. In or about May 2012, Plaintiff received from its predecessor an express assignment of the "SSG Baseball" Mark, including any common law trademark rights in that unregistered Mark.

15. In or about August 2012, Plaintiff received from its predecessor an express assignment of the "Select Sports Group Baseball" Mark, including any common law trademark rights in that unregistered Mark.

16. In or about August 2012, Defendant sent Plaintiff a single email stating its incorrect position that Plaintiff had no continuing right to use the "Select Sports Group Baseball" Mark.

17. For almost two years *after* sending that email, Defendant did nothing at all to stop Plaintiff's use of that Mark or to police or enforce its purported common law trademark rights therein. Plaintiff continued – with Defendant's actual and/or constructive knowledge – to operate its baseball agency using the Marks consistent with past practices and the rights it received in the separation.

18. 23 months later, on June 24, 2014, Defendant's attorney sent Plaintiff a cease and desist letter threatening to sue Plaintiff for common law trademark infringement and demanding that Plaintiff stop using the "Select Sports Group Baseball" Mark. *See* Exhibit A.

19. On July 3, 2014, Plaintiff responded to the demand letter and stated its position that Defendant does not own the intellectual property rights in the "Select Sports Group Baseball" Mark and, to the extent it ever did, had long since lost the ability to enforce those rights by consenting to Plaintiff's use of the name for almost half a decade, and by failing to take diligent steps to protect its supposed trademark rights. *See* Exhibit B.

20. The parties' dispute over their respective rights in the Marks remains pending and unresolved.

**REQUEST FOR DECLARATORY JUDGMENT**

21. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

22. Pursuant to § 37.004(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, Plaintiff asks the Court to construe the parties' relationship and course of dealing, the relevant agreements, and the facts and circumstances surrounding the above-described transactions, transactions, and enter a declaratory judgment establishing the parties' rights and obligations thereunder including but not limited to a declaration that:

a. Plaintiff has not infringed on any common law trademark rights allegedly owned or held by Defendant in connection with the Marks;

b. Plaintiff owns and holds exclusive ownership of and right to use the Marks and Defendant does not own or hold any interest in the Marks;

c. Plaintiff possesses an equal or superior right to Defendant in and to use the Marks; and/or

d. Defendant is barred under Texas law from asserting any alleged rights in the Marks by (i) Defendant's failure to take diligent steps to claim or protect such rights; (ii) acquiescing in or consenting to Plaintiff's prior and ongoing use of the Marks; (iii) unreasonably delaying the assertion of rights in the Marks

thereby causing Plaintiff undue prejudice; (iv) laches; (v) waiver; (vi) estoppel; and/or (vii) limitations.

23. As established by the facts set forth above, there is an actual, present and practical need for declaratory relief because there is a justifiable controversy about the rights and obligations of the parties that is real and substantial, and involves a genuine conflict of tangible interests.

**ATTORNEYS' FEES**

24. As a result of Defendant's wrongful conduct described above, Plaintiff was forced to retain the undersigned counsel in relation to this action. Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001, *et. seq.*, Plaintiff seeks an award of reasonable and necessary attorneys' fees and costs incurred through trial and final appeal of this cause.

**CONDITIONS PRECEDENT**

25. All conditions precedent to the recovery sought herein have been met or have been waived.

**REQUEST FOR DISCLOSURE**

26. Defendant is requested to disclose all information set forth in TEXAS RULE OF CIVIL PROCEDURE 194.2 within 50 days of service of this Original Petition and Request for Disclosure.

**IV. RELIEF REQUESTED**

For the reasons set forth herein, Plaintiff asks that Defendant be cited to appear and answer this suit and, upon final trial, the Court render judgment in favor of Plaintiff and against Defendant for declaratory relief; attorneys' fees; pre- and post-judgment interest and costs of suit as provided by law; and any other relief at law or in equity to which Plaintiff may show itself justly entitled.

Respectfully submitted,

DUNN SHEEHAN LLP

By: */s/ William D. Dunn*

William D. Dunn
State Bar No. 24002023
ddunn@dunnsheehan.com
John David Blakley
State Bar No. 24069388
jdblakley@dunnsheehan.com
3400 Carlisle Street, Suite 200
Dallas, Texas 75204
Phone: 214-866-0156
Fax: 214-866-0070

**ATTORNEYS FOR PLAINTIFF**

# Exhibit A

EWING & JONES
ATTORNEYS AT LAW

6363 Woodway, Suite 1000
Houston, Texas 77057

www.ewingjones.com
kjaasma@ewingjones.com

d: 713-590-9675
m: 713-899-7853
p: 713.590.9600
f: 713.590.9601

June 24, 2014

***Sent via Certified Mail, R.R.R. and email*** (lm1185@aol.com)

Mr. Lane McNamara
Access Sports, LLC
5005 LBJ Freeway, Suite 1300
Dallas, Texas 75244

Dear Mr. McNamara:

This law firm represents Select Sports Group, LLC ("Select Sports Group") in connection with its intellectual property rights. Your use of "Select Sports Group" and Select Sports Group's SSG logo "" (the "SSG Logo") (collectively "the Marks") is a violation of Select Sports Group's common law trademark rights, and this letter constitutes Select Sports Group's demand that Access Sports, L.L.C. and S.S.G. Baseball, L.L.C. cease and desist any and all use of the Marks.

As you know, Select Sports Group is a sports agency located in Houston, Texas. Select Sports Group was originally registered as a Texas limited partnership under the name Strategic Sports Group, Ltd. in March 2000 and was amended to Select Sports Group, Ltd. in June 2003. Select Sports Group began using the SSG Logo in 2004 and has continually used the Marks throughout North America in connection with its sports agency services since that time. Since its inception, Select Sports Group has continually used the Marks in advertising campaigns and in the community, including through its website at www.selectsportsgroup.com, which Select Sports Group registered in 2006. Select Sports Group's clients, and the general public, have come to recognize Select Sports Group as an established and successful sports agency.

SSG Baseball, L.P. was a baseball agency located in Houston, Texas that shared similar ownership with Select Sports Group. SSG Baseball, L.P. was registered as a Texas limited partnership in September 2007. In January 2010, SSG Baseball, L.P. filed an Assumed Name Certificate for "Select Sports Group Baseball." During the common ownership period of Select Sports Group (which also did and does business as SSG Football) and SSG Baseball, SSG Baseball had (at most) an implied license to use the Marks.

In May 2012, SSG Baseball, L.P. assigned the following to Access Sports, LLC ("Access Sports"): (i) the name "SSG Baseball"; (ii) the Internet domain name www.ssgbaseball.com; (iii) the Cost Sharing Agreement regarding the offices space located at 2700 Post Oak Blvd., Suite 1450, Houston, Texas 77056 (the "Cost Sharing Agreement"); and (iv) certain office furniture and equipment (the "Assignment"). On August 13, 2012, Matthew Frazier, the General Counsel for Select Sports Group, sent emails to Lane McNamara of Access Sports, LLC and Bret Sanders of SSG Baseball, L.P. notifying each that the assignment of the name "SSG Baseball" did not

grant the right to use the Marks (Select Sports Group and the SSG Logo) to Access Sports. SSG Baseball purportedly attempted to assign rights to Select Sports Group Baseball to Access Sport on August 21, 2012, but that assignment was ineffective in that any license SSG Baseball had to use Select Sports Group Baseball had terminated when the common ownership of Selects Sports Group Football and SSG Baseball ended, and Mr. Frazier's August 12, 2012 letter made it clear that Access Sports had no ongoing right to use the Marks.

On August 21, 2012, eight days after receiving the emails from Mr. Frazier, SSG Baseball, L.P. and Access Sports executed a "Modification, Assignment and Assumption Agreement" whereby SSG Baseball, L.P. purported to include the name "Select Sports Group Baseball" in its assignment to Access Sports (the "Modification"). This assignment was ineffective as SSG Baseball did not have the right to assign the Marks. Furthermore, as stated in the Modification, SSG Baseball, L.P. filed an abandonment of the assumed name certificate and neither Access Sports nor SSG Baseball, LLC has filed an assumed named certificate with the Texas Secretary of State. Regardless, simply filing an assumed name certificate does not grant a license to infringe on a common law trademark.

In March 2014, Select Sports Group became aware of your use of the Marks at www.ssgbaseball.com. Although the SSG Logo was recently removed from your website, "Select Sports Group" is still used prominently.

Under Texas law, common law trademark infringement occurs when a party utilizes a trade or service mark that creates a likelihood of consumer confusion. Given the obvious similarity between "Select Sports Group" and "Select Sports Group Baseball," and the similar services provided by those two entities, consumers confusion is inevitable in the event that SSG Baseball continues to use Select Sports Group Baseball.

If Select Sports Group elects to protect its legal interests in court, it would be entitled to seek: (1) preliminary and permanent injunctions against further use of the Marks; (2) actual monetary damages, including for damage to goodwill in the market; (3) disgorging of any profits you have realized through your use of the Marks; and (4) reimbursement of attorney's fees required to prosecute a lawsuit against you.

Please be advised that Select Sports Group will undertake all appropriate steps to protect its Marks and its associated goodwill. You can avoid legal action by immediately ceasing and desisting from any and all infringing activity. You must cease and desist all use of "Select Sports Group" on www.ssgbaseball.com, letterhead, business cards, marketing materials, and in any other capacity. Select Sports Group and I will be monitoring your use of the Marks for this purpose. Additionally, you must execute a copy of this letter and send it to this firm within ten (10) days of the receipt of this letter. You may, of course, consult with an attorney before taking any action if you so choose.

Finally, nothing in this letter shall be deemed to relieve Access Sports from its obligation to pay monthly rent to Select Sports Group under the terms of the Cost Sharing Agreement or the Assignment. Enclosed please find the rent invoices for May and June

If you or your attorney has any questions, please feel free to contact me.

Sincerely,

Ewing & Jones, PLLC

Keith Jaasma

Keith Jaasma, Principal

KJ:skh

cc: Matthew Frazier

Bryan Cahill (bcahill@ssgbaseball.com)

# Exhibit B

# DUNN | SHEEHAN LLP

William D. Dunn
ddunn@dunnsheehan.com

3400 Carlisle St., Ste. 200
Dallas, Texas 75204
214.866.0156
214.866.0070 fax

July 3, 2014

Keith Jaasma
Ewing & Jones
6363 Woodway, Suite 1000
Houston, Texas 77057

*Via facsimile no. 713.590.9601*

Re: Select Sports Group Baseball

Dear Mr. Jaasma:

This law firm represents SSG Baseball, LLC f/k/a Access Sports, LLC ("SSG"). This letter responds to your June 24 threat letter on behalf of Select Sports Group, LLC ("Select"). Your client does not own the intellectual property rights in the name "Select Sports Group Baseball." If it ever did, it has long since lost the ability to enforce those rights by consenting to SSG's use of the name for almost half a decade, and by wholly failing to take diligent steps to protect its supposed trademark rights.

The starting point is the fact that your football agency client does not own the "Select Sports Group Baseball" name. To the contrary, SSG and its predecessor-in-interest, SSG Baseball, L.P., have owned and held the unconditional right to use that name since at least January 2010.[1] Throughout that almost five-year period, SSG and its predecessor have operated their baseball agencies as Select Sports Group Baseball with your client's specific knowledge and consent, from common office space that they share with your client in Houston, Texas. Select's new litigation position – that it actually owns the name and merely gave SSG's predecessor an "implied license" to use it until their ownership separated years ago – is an obvious excuse created by Select to (partially) explain SSG's long-term use of the name and Select's failure to take any action to stop it.

But even assuming for the sake of argument that your client at some point owned common law trademark rights in the Select Sports Group Baseball name, it long since gave up any ability to enforce those rights for multiple independent reasons. One, Select has done nothing to claim or preserve rights to the alleged trademark. Select has made no attempt to register the name at issue with the United States Patent and Trademark Office as a registered trademark. Indeed, Select does not even bother to type the letters "TM" or "SM" on its website or in public documents to inform the public of its intent to claim common law trademark rights in its own name. Nor does Select take diligent steps to police the marketplace for potential infringement,

[1] SSG is not using and does not intend to use the Select Sports Group "Logo" described in your letter. Accordingly, that issue is moot.

as evidenced by the fact that it waited almost five years to send a demand letter objecting to SSG's open and obvious use of the Select Sports Group Baseball name from Select's own office space.

Two, Select has acquiesced in the use of the Select Sports Group Baseball name by SSG and its predecessor-in-interest. As noted, Select has been aware of SSG's use of the disputed name since at least January 2010 – at which time SSG put the public on notice of such use by making an assumed name filing with the State of Texas. As you know, acquiescence occurs when a trademark owner exhibits some measure of agreement or implied consent to a potential infringer's use of a substantially similar mark, and the delay between the active representation and assertion of the right or claim causes the defendant undue prejudice. Implied consent can come in the form of refusing or declining to file suit against a specific infringer or failing to otherwise object to an infringing use of the mark for a period of time – exactly the situation in this case. The resulting prejudice to SSG is self-evident – Select sat back for half a decade and watched SSG invest money and resources in developing its business and the associated goodwill before abruptly switching positions 180° and claiming trademark infringement.

Three, the equitable defense of laches arises where, as here, an alleged trademark owner neglects to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to adverse party bars the owner's ability to sue the defendant for infringement. To defeat a trademark infringement claim under a laches theory, SSG need not prove any intent by Select to consent to SSG's use of the Select Sports Group Baseball name, but needs only show an unreasonable lack of diligence by Select in enforcing its purported rights and resulting prejudice.

Four, Select has waived any right to enforce the alleged trademark by intentionally relinquishing known rights in the disputed name to SSG.

Five, Texas law imposes a two-year statute of limitations on common law trademark infringement claims. *See Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 805-06 (S.D. Tex. 1996). It is likely that your client's claims will be dismissed as time barred without even reaching the merits of the dispute. Are Select's representatives prepared to testify under oath that they first became aware of SSG's use of the Select Sports Group Baseball name in March 2014?

In order to ensure that we fully understand your client's factual position, we have the following questions about specific statements made in your June 24 letter:

- What is the date of the "implied license" that your client now says it gave to SSG to use the name Select Sports Group Baseball? Where is that license documented? What were its terms? Who entered into that supposed license agreement on behalf of Select and SSG?

- Where is the contract or other documentation terminating the "implied license" when the common ownership of Select Sports Group Football and Select Sports Group Baseball terminated in 2012?

- Where is the contract or other document setting forth any agreement by SSG to stop using the name Select Sports Group Baseball?

- Where are the emails, letters, demands, lawsuits, or other documents showing any effort by Select during the past five years to police or enforce its alleged rights in the Select Sports Group Baseball name other than a solitary email sent by Matthew Frazier in August 2012, two years ago?

The foregoing highlights just some of the legal and factual hurdles to Select's threatened lawsuit. To prevail, your client will have to overcome them all and convince a reasonable jury to punish SSG for Select's lack of diligence and inconsistent positions. We like our chances in that trial. As you are undoubtedly aware, Texas law prohibits parties and their attorneys from filing lawsuits that are brought for an improper purpose, including harassment, delay, or increasing the cost of litigation, or are groundless and brought in bad faith or for the purpose of harassment. Any trademark action brought on this record falls squarely within those frivolous pleading standards and will expose Select to an award of attorneys' fees, litigation costs, and other sanctions. We encourage your client to reconsider its position.

Sincerely,

William D. Dunn