IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SSG BASEBALL, LLC, | § |
| | § |
|     Plaintiff-counterdefendant, | § |
| | §   Civil Action No. 3:15-CV-0966-D |
| VS. | § |
| | § |
| SELECT SPORTS GROUP, LLC, | § |
| | § |
|     Defendant-counterplaintiff. | § |

MEMORANDUM OPINION
AND ORDER

    The instant motion to remand this removed case presents the question whether plaintiff-counterdefendant's well-pleaded state-court petition—which seeks a declaratory judgment concerning Texas common law trademark rights—alleges a claim that arises under, or is completely preempted by, federal law. Concluding that defendant-counterplaintiff has failed to demonstrate that this case is removable on either basis, the court grants the motion to remand, including the request for attorney's fees and expenses.

I

A

    Plaintiff-counterdefendant SSG Baseball, LLC ("SSG") brought this suit in Texas state court against defendant-counterplaintiff Select Sports Group, LLC ("Select") under Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a), a provision of the Texas Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.001-37.011 (West 2015). In its state-court petition, SSG seeks a declaratory judgment (a) confirming SSG's ownership of and/or right

to use two common law trademarks, SSG BASEBALL and SELECT SPORTS GROUP BASEBALL (sometimes referred to collectively as the "Marks"), and (b) confirming that SSG has not infringed any of Select's common law trademark rights in connection with the Marks. In its declaratory judgment claim—the sole cause of action alleged in the petition—SSG seeks a declaratory judgment construing the parties' relationship and course of dealing, their relevant agreements, and the facts and circumstances surrounding their transactions, as described in SSG's state-court petition. SSG requests that the court enter a declaratory judgment establishing the parties' rights and obligations, including the following: that SSG has not infringed on any common law trademark rights that Select allegedly owned or held in connection with the Marks; that SSG owns and holds exclusive ownership of, and the right to use, the Marks, and that Select does not own or hold any interest in the Marks; that SSG possesses an equal or superior right to Select in, and to use, the Marks; and/or that Select is barred under the Texas law doctrines of laches, waiver, estoppel, and/or limitations from asserting any alleged rights in the Marks, by failing to take diligent steps to claim or protect such rights, acquiescing in or consenting to SSG's prior and ongoing use of the Marks, and unreasonably delaying the assertion of rights in the Marks, thereby causing SSG undue prejudice.

Select removed the case to this court based on 15 U.S.C. § 1121 and 28 U.S.C. § 1331, contending that this court has federal question jurisdiction. Select maintains that the case is removable because, despite SSG's artful efforts to plead only a state-law claim, the claim arises under federal trademark law, and the claim is completely preempted. Select also

invokes the doctrine of judicial estoppel, contending that SSG took a position before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("PTO") in support of its request to stay its opposition to Select's registration applications that estops SSG from arguing that its declaratory judgment claim does not arise under federal law.

SSG moves to remand the case to state court on the ground that this court lacks federal question jurisdiction because the declaratory judgment action is a state-law claim that does not arise under federal law. SSG also seeks an award of attorney's fees and expenses, contending that the removal of the lawsuit was objectively unreasonable. Select opposes the motion.

B

Because accepting Select's version of the background facts does not affect the decision on the merits, the court will summarize the pertinent parts set out in Select's response to SSG's motion. Select, which was previously Select Sports Group, Ltd. ("Select Ltd."), owns the mark SELECT SPORTS GROUP for use with sports agent services for professional athletes. In 2007 a majority of Select's owners, together with other individuals, formed SSG Baseball, L.P. ("SSG LP"). SSG LP later hired Bryan Cahill ("Cahill") as an employee. SSG LP was permitted to use the SELECT SPORTS GROUP mark because Select had a partial ownership interest in SSG LP.

In 2012 the relationship between Select and SSG LP began to come to an end. Cahill left SSG LP and joined Access Sports, LLC ("Access"). To smooth Cahill's transition from

SSG LP and to minimize a perceived disruption to his clients, Select Ltd. allowed Access to use the name "SSG Baseball."  In August 2012 Access was told that it could no longer use "Select Sports Group" or Select's logo.  Access assumed the shared lease obligations of SSG LP for its Houston office, and it later changed its name to "SSG Baseball, LLC" (which, as noted above, is referred to in this memorandum opinion and order as "SSG").  Since 2012, SSG and SSG LP have existed as unrelated, separate legal entities representing athletes throughout the United States.

In 2014 SSG requested a copy of Select's logo to display on its website.  SSG was informed that it did not have Select's permission to use the logo or to use SELECT SPORTS GROUP alone or in conjunction with BASEBALL.  SSG responded by producing a purported assignment of the mark SELECT SPORTS GROUP BASEBALL from SSG LP to Access.  The parties dispute the validity of the assignment and whether SSG has any rights to the SELECT SPORTS GROUP BASEBALL mark.

In June 2014 Select filed a trademark application with the PTO for the SELECT SPORTS GROUP mark.  Select also filed an application with the PTO for its SSG Logo.

In July 2014 SSG filed a trademark application with the PTO for SELECT SPORTS GROUP BASEBALL.  In an October 2014 office action, the PTO examiner indicated that Select's SELECT SPORTS GROUP application would be a potential bar to SSG's registration of SELECT SPORTS GROUP BASEBALL.

In July 2014 SSG also filed a trademark application for the word mark SSG BASEBALL. In an October 2014 office action, the PTO examiner indicated that Select's

SSG Logo application would be a potential bar to the registration of SSG BASEBALL.

In November 2014 SSG filed with the TTAB an opposition ("Opposition") to Select's SELECT SPORTS GROUP and SSG Logo applications. Select moved to dismiss the case for failure to state a claim based on the absence of allegations of prior use of the mark or logo, and the motion was granted in May 2015. SSG was given leave to amend its Opposition, and the TTAB stayed the case.

Shortly after SSG filed the instant lawsuit, it filed a motion to stay the Opposition that it had previously filed with the TTAB. In the motion to stay, SSG asserted that "there is no doubt that [the State Court Action] *will* have a bearing on the Opposition." D. Resp. Ex. 9 at 5. SSG asserted that the lawsuit "will have a direct bearing on the rights of the parties to register their respective trademarks at the USPTO and on the appropriate description of services that each party should receive on their respective registrations." *Id.* In its reply to Select's response to the motion to stay the Opposition, SSG argued that "the core of the issues in dispute in [the] [Opposition] . . . should be determined . . . by the district court in the State of Texas." D. Resp. Ex. 10 at 2. SSG argued:

> the primary issue is whether the parties' prior business dealings and agreements with each other should have any bearing on the right of [Select] to register its marks. It is clear and logical that these prior business dealings and agreements be determined before [Select] is granted the exclusive rights associated with a trademark registration. The appropriate forum for determining those prior business dealings and agreements is the State Court of Texas, whose determination will then provide the contextual background necessary to determine which marks should be registered and to whom.

*Id.*

The TTAB concluded that "[a] review of the complaint filed in the civil action indicates that it involves a dispute over the parties' respective rights in their marks, and specifically, in the marks that are at issue in this opposition." D. Resp. Ex. 11 at 10. The TTAB suspended the Opposition because "the outcome of the civil action may have a bearing on the parties' respective rights, and thus a bearing on this opposition." *Id.*

II

As the party who removed this case, Select must overcome an initial presumption against jurisdiction and must establish that removal is proper. *See, e.g., Carnes v. Data Return, LLC*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). The removal statute implicates federalism concerns and therefore should be strictly construed. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

"Ordinarily, the well-pleaded complaint rule governs federal question jurisdiction. Under the rule, '[r]emoval is not possible unless the plaintiff's "well pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction.'" *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 619 (N.D. Tex. 2007) (Fitzwater, J.) (alteration in original) (quoting *Ervin v. Stagecoach Moving & Storage, Inc.*, 2004 WL 1253401, at *2 (N.D. Tex. June 8, 2004) (Fitzwater, J.)); *see Carpenter v. Wichita Falls*

*Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908) ("A determination that a cause of action presents a federal question depends upon the allegations of the plaintiff's well-pleaded complaint.")). The well-pleaded complaint rule makes the plaintiff "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Therefore, even if federal claims are available, a plaintiff may remain in state court by relying exclusively on state law. *See id.*

"A federal claim does not exist simply because facts are available in the complaint to suggest such a claim." *Tex. Dep't of Protective & Regulatory Servs. v. Mitchell-Davis*, 2007 WL 4334016, at *2 (N.D. Tex. Dec. 11, 2007) (order) (Fitzwater, C.J.) (citing *Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 292 (E.D. Tex. 1988); *Chavez v. McDonald's Corp.*, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (Fitzwater, J.) (holding that plaintiff had not alleged federal-law claim even though he referred at one point to exhausting his administrative remedies under federal law, where he otherwise clearly alleged that his claims were based on Texas statutory or common law)). Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint" and not merely by way of an anticipated defense. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (internal quotation marks omitted); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000) ("Yet the mere fact that a given federal law might 'apply' or even provide a federal defense to a state-law cause of action, is insufficient alone to establish federal question jurisdiction.").

There are exceptions to the well-pleaded complaint rule, one of which is complete preemption, on which Select relies. The complete preemption doctrine "'recharacterizes'" certain state-law claims "as 'arising under' federal law for the purposes of determining federal question jurisdiction." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). It applies where Congress has preempted an entire area such that "any civil complaint raising this select group of claims is necessarily federal in character." *Arana*, 338 F.3d at 437 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). "'Because they are recast as federal claims,'" state-law claims that are completely preempted provide a basis for removal. *McLaren v. RailAmerica, Inc.*, 2001 WL 366431, at *2 (N.D. Tex. Mar. 21, 2001) (Fitzwater, J.) (quoting *McClelland*, 155 F.3d at 512). A court is required to look beyond the face of the complaint to determine if federal law "so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Carpenter*, 44 F.3d at 366.

III

Select maintains first that the case was properly removed under the artful pleading doctrine because SSG's claim is completely preempted.[1]

---

[1] At one point in its response, Select appears to conflate the concepts of complete preemption and of a state-law claim that arises under federal law. Rather than argue that Congress has preempted the entire area of trademark law, Select relies on the nature of SSG's claim, maintaining that SSG is asking the court to determine the parties' rights to register their marks with the PTO, and the scope of coverage of these registrations. *See* D. Resp. 9. Although the concepts of "arising under" and "complete preemption" both support the

A

To establish that SSG's declaratory judgment action is completely preempted, Select maintains that registration of trademarks with the PTO and opposition to those trademarks is governed exclusively by federal law; that the procedures for federal trademark registration are covered by 15 U.S.C. § 1051, and the conditions for registration of a trademark are governed by 15 U.S.C. § 1052; that opposition to registration of a pending application is governed exclusively by 15 U.S.C. § 1063; and that 37 C.F.R. § 2.133 covers the amendment of applications subject to an opposition proceeding. Select posits that these provisions completely preempt any state laws that would purport to govern the registration of trademarks with the PTO or the scope of such trademark registrations. Citing 15 U.S.C. § 1119, Select maintains that issues regarding cancellation of registered trademarks are covered exclusively by federal statute, as are federal trademark applications, oppositions to applications, and federal trademark registrations.

Select also relies on the jurisdictional grant found in 15 U.S.C. § 1121(a) of actions involving trademark applications and registrations, and the prohibition found in 15 U.S.C. § 1121(b) that prevents, *inter alia*, state courts from making alterations to registered marks.

Finally, Select cites *B&B Hardware, Inc. v. Hargis Industries, Inc.*, ___ U.S. ___, 135 S.Ct. 1293 (2015), contending that in *B&B Hardware* the Supreme Court emphasized the

---

exercise of federal question jurisdiction, they are distinct. *See Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) (referring to whether "state law claims necessarily raise a federal issue" and whether "state law claims are completely preempted by federal law" as separate grounds for federal question jurisdiction).

importance of the federal registration process and its exclusively federal nature, and the substantial benefits of registration and Congress' elaborate registration scheme in holding the decisions of the TTAB could have preclusive effect on federal district courts as an indication that Congress intended federal registration to be governed exclusively by federal law and to completely preempt any state laws that would purport to affect the right to, or scope of, federal registration.[2] Select contends that "[w]hile Federal Courts do not have *exclusive* jurisdiction over all Lanham Act claims, with respect to federal registrations, federal law completely preempts state law." D. Resp. 12-13 (footnote omitted). It posits that federal courts need not have exclusive jurisdiction for a case to be removable, and that it need not rely on a preemption defense to demonstrate that removal is proper given that SSG stated in its PTO Opposition that it was seeking an adjudication in this lawsuit of its and Select's rights to register their respective marks.

B

"[T]he artful pleading doctrine applies *only* where state law is subject to complete preemption." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 561 (5th Cir. 2008) (citing *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188-89 (5th Cir. 2001)). "[C]omplete preemption is a narrow exception to the well-pleaded complaint rule." *Hood*

---

[2]This argument, asserted under the rubric that "Congress Intended Federal Trademark Registration to Be Governed Solely by Federal Law," D. Resp. 11 (bold font omitted), is in some respects redolent of an assertion of *conflict* preemption, not *complete* preemption. *Conflict* preemption, however, is a defense and does not give rise to a right of removal. *See, e.g., Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).

*ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013) (quoting *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011)). A state law claim is preempted if "Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008). "The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Hood*, 737 F.3d at 89 (quoting *Elam*, 635 F.3d at 803). "[T]he proper inquiry [for determining preemption] focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003). If complete preemption applies, federal law creates a federal cause of action that substitutes for the state cause of action. *See Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996); *Lehmann v. Brown*, 230 F.3d 916, 919-20 (7th Cir. 2000). Accordingly, SSG's declaratory judgment action is preempted only if federal law provides the exclusive cause of action for its claim. *See Hood*, 737 F.3d at 89 (citing *Beneficial Nat'l Bank*, 539 U.S. at 11).

Select has not demonstrated that Congress has completely preempted the entire area of trademark law such that any claim asserting ownership of, and the right to use, a state common law trademark, and seeking a declaration that the claimant is not infringing another party's common law trademark rights, is necessarily federal in character. Select does not cite a single case that holds that such state claims are completely preempted. And the federal

statutes that it cites deal with federal trademark registration. But SSG is not seeking trademark registration, and, as the court explains below, registration is not even required to bring a common law trademark claim under Texas law. *See infra* § V.

Courts *have* held, however, that state-law trademark claims are *not* completely preempted. *See, e.g., La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 346 (3d Cir. 1974) (rejecting argument that Lanham Act preempted field of trademark regulation, and holding that "the Lanham Act generally does not preempt state regulation of trademarks, statutory or common law"); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir. 1981) (holding that plaintiff who could "support a claim founded upon either federal or state law is free to confine his claim to one based on state law and proceed in state court."); *Fischer v. Holiday Inn of Rhinelander, Inc.*, 375 F. Supp. 1351, 1353 (W.D. Wis. 1973) (holding that action seeking relief solely under state law should not be removed to federal court, even when mark was federally registered, because the Lanham Act "does not preempt the state law of unfair competition and trademark infringement"); *Franquicias Nativas, Inc. v. Cleridel Corp.*, 2012 WL 1575723, at *6 (D.P.R. May 3, 2012) ("[C]ourts in other jurisdictions analyzing whether the Lanham Act preempts state law have routinely found that it does not.").

To establish that SSG's claim is completely preempted, Select must be able to point to a federal cause of action that replaces it. But it does not. Absent a showing that the narrow exception of complete preemption applies—which Select has not made—SSG's declaratory judgment action is not completely preempted.

IV

Select next contends that SSG is judicially estopped from arguing that its claim does not arise under federal law based on positions it took before the PTO.[3]

A

Select posits that in successfully obtaining a stay of its Opposition before the TTAB, SSG relied on the federal nature of this lawsuit. According to Select, in SSG's motion to remand, it maintains that its state-court petition does not seek any relief pertaining to any application to register the Marks with the PTO, any opposition to such registration, or any other matter related to the TTAB or the parties proceeding before the PTO. But Select maintains that SSG argued to the TTAB that there was no doubt that this lawsuit would have a bearing on its Opposition; SSG represented to the TTAB that the lawsuit would have a direct bearing on the rights of the parties to register their respective trademarks at the PTO and in the appropriate description of services that each party should receive on their respective federal registrations; and, in its reply in support of the stay request, SSG stated that the requested stay went to the core of the issues in dispute in the Opposition, which should be determined by the state district court. Select maintains that SSG represented to the TTAB that the primary issue was whether the parties' prior business dealings and agreements had any bearing on SSG's right to register its mark with the PTO, that it was clear and logical that these prior business dealings and agreements be determined before Select was granted

---

[3]The parties do not dispute that judicial estoppel can arise from proceedings before a quasi-judicial body rather than a court.

the exclusive rights associated with a trademark registration, and that the appropriate forum for determining those prior business dealings and agreements was the State Court of Texas, whose determination would provide the contextual background necessary to determine which marks should be registered with the PTO and to whom. Select contends that, based on SSG's representations, the TTAB suspended the Opposition, concluding that the case involved a dispute over the parties' respective rights in the marks. Select posits that the elements of judicial estoppel have been established by this conduct and the TTAB's acceptance of SSG's position.

B

"Judicial estoppel applies to protect the integrity of the courts—preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it." *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (citation omitted). The elements of judicial estoppel are "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012).

The position that SSG took before the TTAB is not plainly inconsistent with any position that SSG is taking in this court in support of its remand motion, or vice versa. Before the TTAB, SSG asserted that this lawsuit could affect the trademark proceedings pending in the PTO. In particular, SSG represented that this lawsuit would likely have a direct bearing on the rights of the parties to register their respective trademarks, and in the

appropriate description of services that each party should receive on their respective federal registrations. That position, however, is entirely consistent with an assertion that *state law* would determine who had the rights to the marks and was entitled to trademark protection. SSG did not represent that anything about this lawsuit arose under federal law. In fact, the TTAB's conclusion that this case involves a dispute over the parties' respective rights in the marks—while undoubtedly correct—says nothing about the *nature* (federal or state, statutory or common law) of the dispute.

Select has therefore failed to establish that judicial estoppel applies.

V

Finally, Select contends that SSG is necessarily stating a federal question claim because federal trademark registration is purely an issue of federal law, and the Lanham Act is the sole source of rights related to federal trademark registrations that SSG seeks to determine in this matter. Select posits that SSG is seeking a determination regarding SSG's and Select's rights regarding federal trademark registrations, and that because SSG seeks a determination regarding the rights of SSG and Select to register their respective marks with the PTO, SSG's claim arises under federal law.

The "arising-under" provision for federal question jurisdiction is invoked "by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). A court may determine, however, that a state-law claim "arises under" federal law if the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and

substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. But merely stating that a state-law claim raises a "disputed and substantial question of federal law" and that claim implicates "strong federal interest" is insufficient to satisfy *Grable* when a defendant does not identify a state claim that meets the requirements of *Grable*. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 338 (5th Cir. 2008). "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar*, 482 U.S. at 399.

SSG is not, as Select contends, seeking in this lawsuit to determine federal trademark registration rights. It is seeking a declaratory judgment confirming its ownership of, and/or right to use, the SSG BASEBALL and SELECT SPORTS GROUP BASEBALL common law marks, and confirming that it has not infringed any of Select's common law trademark rights in connection with the Marks. The specific relief that SSG requests involves declarations that SSG, not Select, owns and has the exclusive the right to use the Marks, and/or that Select is barred on various grounds from asserting any alleged rights in the Marks. Although the decision in this lawsuit could affect (perhaps even determine) who is entitled to register the Marks, SSG is not suing for registration of the Marks or for a declaration that it, rather than Select, is entitled to register the Marks. At most, SSG is bringing a declaratory judgment action that could impact who is entitled to federal trademark registration. Select is therefore incorrect in asserting that "[b]ecause [SSG] is seeking a

determination regarding the federal registration of its marks and [Select's] marks and the scope of such registrations, its claims arise under federal law and were properly removed, notwithstanding [SSG's] efforts at artful pleading to avoid revealing the true federal nature of its claims." D. Resp. 8. SSG is seeking no such determination.

In fact, Select's emphasis on the premise that SSG is asserting a registration-related remedy overlooks that SSG is asserting only a Texas *common law* trademark right. Although the elements of common law trademark infringement under Texas law are the same as those under federal trademark law, *see, e.g., Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App. 2010, pet. denied), a Texas common law trademark infringement action does not even require that the trademark be registered. *See, e.g., Cano v. Macarena*, 606 S.W.2d 718, 722 (Tex. Civ. App. 1980, writ dism'd) (holding that plaintiff suing to restrain another's use of a trademark has the burden of establishing right to exclusive use of the trademark, and that "[h]e must show either that he has the right to appropriate the mark as a trademark at common law or that it was registered."); *BankTEXAS, N.A. v. First Bank*, 1998 WL 12658, at *2 (Tex. App. Jan. 15, 1998, no pet.) (unpublished opinion) ("Appellee did not register the name 'First Bank' as a trademark. Accordingly, state common-law principles apply.").

Accordingly, although the outcome of this lawsuit could (and perhaps will) impact the federal trademark proceedings pending before the PTO, this does not transform SSG's state common law trademark declaratory judgment action into a claim that arises under federal law.

VI

SSG also moves for an award of attorney's fees and expenses, contending that Select's removal was objectively unreasonable.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *In re Enable Commerce, Inc.*, 256 F.R.D. 527, 533 n.14 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

The court concludes, for the reasons explained above, that Select did not have an objectively reasonable basis to remove this case. There is no authority that supports the assertion that SSG's declaratory judgment action is completely preempted. The cases in fact support the opposite conclusion. It was objectively unreasonable to rely on judicial estoppel in the absence of plainly inconsistent positions. And an objective reading of SSG's petition does not support the conclusion that SSG is alleging a claim that necessarily raises a stated federal issue. In essence, Select has misread SSG's petition to seek federal trademark registration, which it clearly does not. SSG is therefore entitled to recover its reasonable attorney's fees and expenses incurred as a result of the removal. *See, e.g., Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 544 (5th Cir. 2012) (holding that district court did not abuse its discretion in concluding that defendant lacked objectively reasonable grounds to believe that

removal was proper, and in awarding relief under § 1447(c), where defendant failed to satisfy first prong of *Grable* test and show that plaintiff's state-law claim necessarily raised a stated federal issue).

Accordingly, within 21 days of the date this memorandum opinion and order is filed, the parties must confer regarding the reasonable attorney's fees and expenses that SSG incurred as a result of the removal. If they reach agreement, Select must pay these attorney's fees and expenses within 28 days of the date this memorandum opinion and order is filed. If they do not reach agreement, SSG must file its application for attorney's fees and expenses within 28 days of the date this memorandum opinion and order is filed. Briefing will then follow according to the deadlines prescribed by the local civil rules.

\*   \*   \*

For the reasons explained, the court grants plaintiff's motion to remand. The court concludes that it lacks subject matter jurisdiction, and, pursuant to 28 U.S.C. § 1447(c), remands this case to the 191st Judicial District Court, Dallas County, Texas. The clerk of court shall effect the remand in accordance with the usual procedure.

**SO ORDERED**.

August 13, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE